Allen, J.
It was objected, in the first place, that the act of assembly of 1827 did not authorize a proceeding in chancery; and that if, under a liberal construction of the act, such a proceeding could have been maintained, the act authorized a proceeding against the treasurer or his representatives, and as it appears, that John and not William Caruthers was the treasurer, the plaintiffs had no authority to proceed against the representatives of William. In the view this court takes of the case, it is unnecessary to decide these questions. Grant that the trustees of Lexington had a right to proceed by bill in equity, and that William Caruthers, though not regularly appointed treasurer of the lottery, acted as treasurer, have the trustees made out such a case as entitles them to relief in equity ?
It seems to me, that, after the great lapse of time which has occurred, the death of all the parties who *618 could throw light on the transactions, and the impossibility, with the scanty materials before us, to settle the account correctly, the court below, upon the coming in of the commissioner’s report, ought to have dismissed bill. The lottery was drawn in 1805. The roads, to the construction of which the money was applied, appear to have been completed in 1808 or 1809. From that period till 1817, when Caruthers died, the commissioners of the lottery seem to have concerned themselves no further with the matter, except to file an answer in 1811 to a bill of Smith and Lyle. In 1808, the last meeting of the commissioners of which we have any evidence, took place ; and then a committee was appointed to settle Caruthers's accounts with the lottery. And twenty-two years afterwards, and thirteen years after the death of Caruthers, this suit is brought.
In Pickering v. Ld. Stamford, 2 Ves. Jr. 583. the master of the rolls said, “ that parties shall not, by neglecting to bring forward their demands, put others to a state of inconvenience subjecting them to insuperable difficulties. Against such a bill undoubtedly the court ought to set its face.”—“ If, from the plaintiff’s lying by, it is impossible for the defendants to render the accounts he calls for, or it will subject • them to great inconvenience, the plaintiff must suffer, or the court will oppose, what I think the best ground, public convenience.” The english cases refusing relief after a great lapse of time, were reviewed and approved by this court in the case of Carr's adm'r v. Chapman's legatees, 5 Leigh 164. 178. where it is said, that “ the principles deduced from the english cases are fully supported, if not advanced a step, by the spirit of our own decisions and of our legislation also.” The same principles are affirmed in Hayes v. Goode, 7 Leigh 452. And in Atkinson v. Robinson, 9 Leigh 393. 396. the court held, “ that even if it were clearly proved, that the decedent Beverley Robinson had, in the last hours of his life, acknowledged that the *619 debt to Smart, which the complainant claimed, had not been fully discharged, yet the amount remaining due was uncertain, and coidd only be ascertained by a settlement of accounts in reference to transactions more than twenty-seven years old at the commencement of this suit, and now of more than thirty-seven years standing. Such an account ought not to be decreed; for every claimant who asks relief of a court of equity ought to exhibit his claim within a reasonable time, so that, in giving him a decree, the court may not do injustice to the defendant.” No particular period is fixed by the cases as limiting the demand for an account. If, from the delay which has taken place, it is manifest that no correct account can be rendered, that any conclusion to which the court can arrive must be, at best, but conjectural, and. that the original transactions have become so obscured by time and the loss of evidence and the death of parties, as to render it difficult to do justice, the court will not relieve. It is the duty of the plaintiff in equity, as well as at law, to establish his title to the relief sought for, by satisfactory proof; it will not answer to shew a probable title to something. He must satisfy the court, that it can extend relief without the hazard of doing injustice to the defendant.
To apply these principles to the present case: William Garuthers was the secretary, not the treasurer, of the lottery. As secretary, it was his duty to keep the accounts with the agents to whom tickets were entrusted for sale. That account seems to have been kept by him, and furnishes the basis of the account reported by the commissioner. But this account does not prove, that he acted as treasurer in fact: it was kept by him as secretary, in discharge of his duties as secretary. The evidence shews that he was the active and efficient manager of the business, and, taken all together, raises a strong presumption, that most of the receipts and disbursements passed through his hands. Still, no account *620 kept by him as treasurer, or by any other person, is produced, though in all probability such an account was kept, by some person, somewhere. The evidence does not shew, that he received all the proceeds arising from ^Ie sa^e the tickets, or made all the disbursements, There was a treasurer, who may have transacted part of the business. Yet the first step in the account, is to charge him, as treasurer in fact, with the price of all the tickets disposed of. The evidence shews a great anxiety, on the part of the managers, and of the community, for the completion of the roads. A private subscription was raised in aid of the lottery fund: can we suppose, that this would have been done, if a large fund remained in the hands of Caruthers ? In 1808, the legislature contributed 1000 dollars, reciting in the act, that the funds raised by the lottery were insufficient. These circumstances, taken in connexion with the silence of all parties afterwards, render it extremely improbable, that such a fund could have been, lying in the hands of the secretary unappropriated.
It was contended, that the lottery fund was arrested in the hands of Caruthers, by the suit of Smith and Lyle, and that this explains why the accounts were not settled, and the balance was not exacted. The record of that suit is not exhibited in this. To sustain their proposition, the plaintiffs are themselves obliged to rely on the answer of the commissioners in that suit; and that answer, when looked to, repels the idea that there could have been any balance. The commissioners set out the difficulties they had to encounter, and their inability to dispose of half of the lottery tickets: they aver, that they realized not more than 2000 dollars, and that the money (together with the private subscriptions and the donation of 1000 dollars from the legislature) was appropriated to the road. And they, throughout, resist the claim of those plaintiffs, as an attempt to fix a personal liability on them for a misapplication of the fund, *621 that is, of the whole fund. They say, indeed, that the outstanding claims on agents had not then heen fully settled up: were they ever fully settled up, and by whom ? by the secretary, or by the treasurer ? All this is left, by the evidence in this cause, absolutely uncertain.
The principal ground on which the plaintiffs rely, is the account between The Lottery and Isaac Carulhers co. exhibited with the defendants’ answer. [Here, the judge entered - into an examination of that document, and shewed that it furnished no evidence of William Caruthers’s indebtedness to the lottery; and then into an examination of the exceptions to the commissioner’s report, and detected many errors in it.]
These considerations shew the great injustice likely to be inflicted, by an attempt to go into an account of such stale transactions, after the death of all the parties who could give satisfactory explanations. The act of 1827, authorizing the suit, does not obviate the objections to an account of such transactions. That act was passed under an impression, that an ascertained balance remained in the hands of the treasurer, because there was no person authorized to demand it. The balance was vested in the trustees of Lexington, and they were authorized to bring an action of debt for it; which plainly shews, that the legislature, if it intended a proceeding by bill in chancery at all, did not mean to sanction a bill for the settlement of stale accounts. Whatever may have been the motives of the legislature, there is nothing in its act to impair the rights of the parties. There is nothing in the actual case, to relieve the plaintiffs from the necessity of establishing their claim by satisfactory evidence. This they have failed to do : on the contrary, the case, as it now stands, leaves the impression, that the proceeds of the lottery have long since been appropriated ; and it is evident, that, at this period, with the materials that have been collected, no *622 account likely to do justice between the parties can be taken.
I am of opinion, that the decree should be reversed, and the bill dismissed.
The other judges concurred. Decree reversed, and bill dismissed.